IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

_____

| | | |
|---|---|---|
| ANTHONY D. ROBERTY, | ) | Cause No. CV 11-56-BU-SEH-RKS |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| STATE OF MONTANA; | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| STATE OF MONTANA, | ) | |
| | ) | |
| Respondent. | ) | |

_____

## I. Synopsis

On September 16, 2011, Petitioner Anthony Roberty filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is a state prisoner proceeding pro se. Petitioner's claim should be dismissed because he fails to state a claim upon which federal habeas relief may be granted.

## II. Preliminary Screening

Rule 4 of the Rules Governing Section 2254 Cases in the United States District

Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.*

### III. Background

Petitioner is serving a five-year sentence on the revocation of the suspended portion of a sentence imposed in 2005 for a felony conviction for driving under the influence ("DUI"). Other sentences and felony DUI convictions have been imposed, but Petitioner's complaint concerns the revocation. *See generally* Br. in Supp. (doc. 2) at 2-3; Br. Ex. E (doc. 2-5) (Order at 1-3, *State v. Roberty*, No. DC-04-166 (Mont. 18th Jud. Dist. Apr. 22, 2009)).

Petitioner was convicted of felony DUI in January 2005. He received a ten-year sentence, consisting of an initial five-year prison term and a suspended term of five years. Before he completed the initial prison term, he was released on parole. While on parole, on February 16, 2008, he committed another felony DUI offense. A new prosecution was commenced. The Parole Board also revoked his parole, and Petitioner was returned to prison to serve the remainder of the initial five-year term of his ten-year January 2005 sentence. Mem. in Supp. of Pet. (doc. 2) at 2.

On April 17, 2009, while Petitioner was still serving the initial prison term of

the January 2005 sentence, the State petitioned the sentencing court to revoke the suspended portion of that sentence, which was scheduled to begin in roughly June 2010. Following a hearing, the sentencing court granted the petition, the suspended term was revoked, and Petitioner was resentenced to serve the last five years of his January 2005 sentence in prison. *Id.*; *see also* Pet. Ex. E (doc. 2-5).

## IV. Analysis

Although some or all of Petitioner's claims may be barred on procedural grounds, and one or two claims may be unexhausted, it is clear that Petitioner is not entitled to relief. Accordingly, it is more efficient to proceed to the merits. *See, e.g.*, 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983).

Although Petitioner's pro se status entitles him to liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), he simply fails to state a claim on which federal habeas relief may be granted. "[O]nly noncompliance with *federal* law . . . renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, __ U.S. __, 131 S. Ct. 13, 16 (2010) (per curiam) (emphasis in original); *see also* 28 U.S.C. § 2254(a); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 443 (9th Cir. 2007).

**A. Claims One and Four**

Petitioner's first and fourth claims are related. Both allege that the State had no authority to file a petition to revoke his suspended term before Petitioner began serving it. Pet. (doc. 1) at 4 ¶ 15A, 6 ¶ 15D.

The petition to revoke was filed in April 2009. Three times before that date, and once after, the Montana Supreme Court held that Montana law authorized the State to file a revocation petition and authorized courts to revoke a suspended term while a prisoner was still in prison serving the unsuspended portion of his term. *See State v. LeDeau*, 215 P.3d 672, 675 ¶ 21 (Mont. 2009); *State v. Morrison*, 176 P.3d 1027, 1031-32 ¶¶ 17-18 (Mont. 2008); *State v. Vallier*, 8 P.3d 112, 114 ¶ 9 (Mont. 2000); *Christofferson v. State*, 901 P.2d 588, 589 (Mont. 1995) (all holding that courts have statutory authority to revoke suspended term before defendant begins serving it).[1]

In January 2011, the Montana Supreme Court reversed itself, overruled each of these cases, and held that a sentencing court "exceeded its statutory authority" when it revoked a suspended sentence based on a petition filed four days before the prisoner

---

[1] Petitioner sought relief against the revocation he contests here by filing a petition for writ of habeas corpus in the sentencing court. It was denied. He appealed its denial to the Montana Supreme Court, but denials of habeas relief are not appealable. As the court explained in Petitioner's case, a prisoner must file a new habeas petition in the Montana Supreme Court instead. *Roberty v. State*, No. DA 10-0220 (Mont. Dec. 8, 2010).

began serving the suspended term. *State v. Stiffarm*, 250 P.3d 300, 302 ¶ 10 (Mont. 2011).

In April 2011, the Montana Legislature amended the revocation statute, Mont. Code Ann. § 46-18-203(2), so that it not only authorizes pre-term filing of revocation petitions but also applies "to all past revocations." 2011 Mont. Laws ch. 230, §§ 1, 3 (eff. Apr. 20, 2011).

The only conceivable federal claim would arise from the Constitution's prohibition against the States' enactment of ex post facto legislation. U.S. Const. Art. I, § 10, cl. 1. Certainly the legislation here is "after the fact." The Montana Supreme Court ruled in *Stiffarm* that the State never did have the statutory authority to file a revocation petition before the suspended term commenced. But the Ex Post Facto Clause "is aimed at laws that 'retroactively alter the definition of crimes or *increase the punishment* for criminal acts.'" *Collins v. Youngblood*, 497 U.S. 37, 43 (1990) (emphasis added). Legislation defining when a petition to revoke may be filed does not alter the definition of the conditions of release, much less the crime that resulted in imposition of those conditions, nor does it increase the punishment for the crime that resulted in imposition of those conditions.

Petitioner argues that his suspended term was revoked 19 months before its commencement, far more than the four days that were enough to invalidate the

revocation in *Stiffarm*. But the date of his revocation could violate the Ex Post Facto Clause only if there is some realistic possibility that no revocation petition would have been filed at all if the State had been required to wait to file it until the suspended term began. *E.g.*, *California Dep't of Corrections v. Morales*, 514 U.S. 499, 509-513 (1995) (holding that legislation eliminating annual parole hearings did not violate Ex Post Facto Clause). As in *Morales*, this possibility "creates only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 514. A petition filed long before a suspended term begins is highly likely to be predicated on a particularly egregious violation – for instance, yet another felony DUI conviction – the force of which will not lessen in the time between commission of the violation and commencement of the suspended term.

Moreover, Petitioner does not even allege that he received less than all the process that was due at his revocation proceeding – in fact, he received more than the Federal Constitution requires, because he was represented by counsel. *Morrissey v. Brewer*, 408 U.S. 471, 489-90 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 787 (1973).

It is not up to a federal court to decide whether, as Petitioner claims, the *Stiffarm* decision means that his current custody violates *Montana* law. The Constitution does not constrain Montana's discretion to decide when a petition to revoke may be filed. Petitioner's first and fourth claims should be dismissed for

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 6

failure to state a claim under federal law.

**B. Claim Two**

Petitioner's second claim alleges that he was sentenced to both the Department of Corrections and Montana State Prison[2] in violation of the Double Jeopardy Clause. U.S. Const. Amend. V; *Benton v. Maryland*, 395 U.S. 784, 794 (1969). The name of the entity responsible for supervision plays no role in double jeopardy analysis. "The question of what punishments are constitutionally permissible is no different from the question of what punishment the Legislative Branch intended to be imposed." *Albernaz v. United States*, 450 U.S. 333, 344 (1981). The Montana Legislature imposes commitments to both the DOC and prison. Mont. Code Ann. § 61-8-731(1) (2007).[3] Even assuming, for the sake of argument, that a mere matter of designation may constitute multiple punishments, the Federal Constitution does not prohibit such multiple punishments. *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

Petitioner also asserts a due process violation, Citation of Authorities (doc. 4) at 2, but, assuming that state law gave Petitioner a protected liberty interest in being

---

[2] This arrangement is not remarkable. In the federal system, for instance, a prison term is served in the custody of the Federal Bureau of Prisons, an agency within the Department of Justice, which is in the executive branch of the federal government. The term of supervised release that follows a federal prison sentence is served in the custody of the United States Probation Office, an agency of the United States Courts, that is, the judicial branch of the federal government.

[3] The date of Petitioner's offense is not in the record, but the statute was not amended between 2005 and 2011.

designated to a particular agency's custody, Petitioner received due process. He had a hearing before a state district court judge. He was represented by counsel. He had the opportunity that state law provides to pursue a direct appeal. *See* Mont. Code Ann. § 46-20-104(1). Federal constitutional due process demands would be satisfied by less. *Morrissey v. Brewer*, 408 U.S. 471, 489-90 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 787 (1973); *see also, e.g.*, *McKane v. Durston*, 153 U.S. 684, 687 (1894) (stating that "[i]t is wholly within the discretion of the state to allow or not to allow" a direct appeal).

Petitioner's second claim fails to allege a violation of federal law and should be dismissed.

### C. Claim Three

Petitioner's third claim alleges that he should have been freed because the State failed to respond within 20 days to a motion he filed and presumably an unopposed motion should be deemed well-taken. Release from custody is not a typical remedy for the State's failure to timely respond to a motion. Petitioner certainly has no federal right to be released under such circumstances. This claim, too, should be dismissed for failure to state a claim under federal law.

### V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

"[O]nly noncompliance with *federal* law . . . renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, __ U.S. __, 131 S. Ct. 13, 16 (2010) (per curiam) (emphasis in original). Petitioner raises issues of state law, not federal law. Perhaps the state trial court lacked statutory authority to revoke Petitioner's suspended sentence at the time it did so, but nothing about its procedures or the outcome indicate that Petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Double jeopardy is not remotely implicated by a prisoner's commitment to two different custodians, nor does a State's failure to meet a response deadline convey a federal right to be released from custody on the prisoner to whose brief the State failed to respond. Petitioner alleges no claims on which a federal court may grant habeas relief to a state prisoner. There is no reason to encourage further federal proceedings.

A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (doc. 1) should be DISMISSED for failure to state a claim on which federal habeas relief may be granted.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If Petitioner files objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding; and he must itemize each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude Petitioner from relying on that fact or argument at a later stage of the proceeding. A district judge will make

a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Petitioner must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 21st day of December, 2011.

      /s/ Keith Strong
     Keith Strong
     United States Magistrate Judge